IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| INNOVATIVE SOLUTIONS AND SUPPORT, INC., | ) ) ) | |
| Plaintiff, | ) | No. 05-2665-JPM/tmp |
| v. | ) ) | UNDER SEAL |
| J2, INC., JOSEPH CAESAR, JAMES ZACHARY, ZACHARY TECHNOLOGIES, INC., and KOLLSMAN, INC., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART ISS'S MOTION FOR FEES**

Pending before the Court is Plaintiff Innovative Solutions and Support, Inc.'s ("ISS") Motion for Attorneys' Fees Under the Tennessee Uniform Trade Secrets Act (Doc. 684), filed December 22, 2007. Defendants James Zachary and Zachary Technologies, Inc. (collectively, "ZTI"); Defendants J2, Inc. and Joseph Caesar (collectively, "J2") and Defendant Kollsman, Inc. ("Kollsman") all filed their responses (Docs. 691, 693, & 697, respectively), on January 14, 2008. ISS filed a Reply (Doc. 727) in support of its motion on March 5, 2008. For the following reasons the Court GRANTS ISS's Motion for Attorneys' Fees Under the Tennessee Uniform Trade Secrets Act and DENIES ISS's Motion for Expert Fees.

## I. BACKGROUND

On November 6, 2007, a jury found, <u>inter alia</u>, that ISS proved by a preponderance of the evidence that Kollsman, ZTI, and J2 misappropriated six of ISS's trade secrets: ISS's checksum source code; ISS's checksum algorithm; ISS's altitude rate algorithm; ISS's combined recipe incorporated in the ISS ADDU and AIU interface; ISS's RS 422 logical message protocol; and ISS's testing and calibration procedures relating to pressure transducer stability, i.e., the pressure transducer stability problem and how to solve the problem. (Jury Verdict Form (Doc. 660) 3-5.) The jury also found that ISS proved by a preponderance of the evidence that Joseph Caesar and ZTI breached their non-disclosure agreements; that Zachary Technologies, Inc. breached its 2002 contract with ISS; that J2 and ZTI unfairly competed with ISS; that Joseph Caesar breached his fiduciary duty under T.C.A. § 48-18-403 to ISS; that ZTI and Joseph Caesar breached fiduciary duties or duties of loyalty to ISS; and that James Zachary is the alter ego of Zachary Technologies, Inc. (<u>Id.</u> at 6-8.) Finally, the jury found that ISS proved by clear and convincing evidence that Defendants' conduct in committing these common law and statutory violations was intentional, reckless, malicious, or fraudulent. (<u>Id.</u> at 16-18.) Now ISS seeks an award of $5,079,136.00 in attorneys'

2

fees and expert fees under the Tennessee Uniform Trade Secrets Act ("TUTSA") § 47-25-1705.

**II. ANALYSIS**

ISS argues that the requested award of $5,079,136 in attorneys' fees is reasonable in this case because the jury found clear and convincing evidence that Defendants acted maliciously, because the hours of work exclude those devoted to the patent issues the Court severed for separate adjudication, and because the rates applied are reasonable in a case of this complexity.

**A. Appropriateness of Attorneys' Fee Award**

TUTSA provides that if "(1) [a] claim of misappropriation is made in bad faith, (2) [a] motion to terminate an injunction is made or resisted in bad faith, or (3) [w]illful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Tenn. Code Ann. § 47-25-1705 (2000). TUTSA directs courts to interpret and apply its provisions "to effectuate its general purpose to make consistent the law with respect to the subject of this act among states enacting it." Tenn. Code Ann. § 47-25-1709 (2000); see also Hauck Mfg. Co. v. Astec Indus., Inc., 375 F. Supp. 2d 649, 654 (E.D. Tenn. 2004) (seeking guidance in interpreting and applying TUTSA from case law of other states that had adopted the Uniform Trade Secrets Act). The Uniform Trade Secrets Act instructs

courts to look to patent law precedents in determining when an award of attorneys' fees is appropriate.  U<small>NIF</small>. T<small>RADE</small> S<small>ECRETS</small> A<small>CT</small> § 4, cmt. (amended 1985)("[P]atent law is followed in allowing the judge to determine whether attorney's fees should be awarded even if there is a jury . . . ."). When, as with TUTSA, the Tennessee legislature "enacts provisions of a uniform code or model act without significant altercation," the Court may assume that it shares "the expressed intention of the drafters of that uniform or model act." In re Estate of Soard, 173 S.W.3d 22, 28 (Tenn. Ct. App. 2005). Accordingly, the Court will rely on federal patent law in determining whether to award attorneys' fees.

An award of attorneys' fees involves a two-part determination. First, the Court must determine whether the prevailing party has proven an exceptional case by clear and convincing evidence. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003) (citing Ruiz v. A.B. Chance Co., 234 F.3d 654, 669 (Fed. Cir. 2000)). A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, or misconduct during litigation. Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378 (Fed. Cir. 2005)) (citing Cambridge Prods. Ltd. v. Penn Nutrients, Inc., 962 F.2d

1048, 1050-51 (Fed. Cir. 1992); Beckman Instruments, Inc., v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989). Other relevant factors include the closeness of the case, the tactics of counsel, the flagrant or good faith character of the parties' conduct, and any other factors contributing to imposition of punitive sanctions. See Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1380-81 (Fed. Cir. 2005).

In this case, both the Court and the jury have already found clear and convincing evidence of an exceptional trade secret misappropriation. The jury found that ISS proved by clear and convincing evidence that Defendants' conduct in committing these common law and statutory violations was intentional, reckless, malicious, or fraudulent. (Jury Verdict Form (Doc. 660) 16-18.) The Court found heightened damages appropriate in light of Kollsman's willful and malicious trade secrets misappropriation, their litigation conduct, their financial condition, and their failure to pursue more effective remedial action. (Order Granting in Part and Denying in Part Plaintiff's Motion for Exemplary and Punitive Damages (Doc. 764) 12-13.) The same evidence of destruction and non-disclosure of requested discovery materials, bad faith defenses, and deliberate and continuing misappropriation that supported an award of heightened damages also supports an award of attorneys' fees. Accordingly, for the reasons discussed in the Court's

Order Granting in Part and Denying in Part Plaintiff's Motion for Exemplary and Punitive Damages, the Court finds that ISS has proven an exceptional case by clear and convincing evidence and that an award of attorneys' fees is appropriate in this case.

**B. Reasonableness of the Award Amount**

The determination of what constitutes a reasonable award of attorneys' fees and costs is also a discretionary one. United Med. Corp of Tenn. v. Hohenwald Bank & Trust Co., 703 S.W.2d 133, 137 (Tenn. 1986); Sanders v. Gray, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998); see also Blum v. Stetson, 465 U.S. 886, 897 (1984)(holding that in federal statutory fee-shifting cases the party seeking an award of attorneys' fees has the burden of demonstrating the reasonableness of hours by providing detailed documentation of the hours and that the opposing party has the burden of producing evidence against this reasonableness). There is no fixed mathematical rule in this jurisdiction for determining reasonable fees and costs. Threadgill v. Threadgill, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987); see also Sanders, 989 S.W.2d at 345; but see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)(establishing the lodestar method for determining awards of attorney fees under any federal statutes authorizing such awards to a prevailing party). Reasonable attorneys' fees are determined in accordance with Tennessee Code

of Professional Responsibility D.R. 2-106 (2002).  D.R. 2-106 provides, in pertinent part, as follows:

> (B) . . . .  Factors to be considered as guides in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent.

ISS urges the Court to assess a reasonable fee using the lodestar method, which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate.  See Blanchard v. Bergeron, 489 U.S. 87, 94 (1989).  ZTI, while conceding that an award of attorneys' fees is authorized in this action, argues that no award can be reasonable until the Court determines Defendants' patent liability.  Kollsman objects to ISS's fee calculations because they include "intertwined" patent litigation work and because ISS improperly relies on national rates.  (Kollsman's Resp. (Doc. 697) 35.)  The Court will address these concerns in turn.

First, the pending status of the patent issues does not preclude an award of attorneys' fees in this case. See Hensley, 461 U.S. at 435; Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1169 (6th Cir. 1996); Wayne v. Village of Sebring, 36 F.3d 517, 532 (6th Cir. 1994)("Under Hensley, it follows that Plaintiff's claim for attorney fees should not be reduced simply because some indeterminate amount of time was expended on the prevailing individual defendants."). Nevertheless, the Court finds it reasonable to award Plaintiff attorneys' fees only for those services devoted to the non-patent issues in this case at this time. See Albright v. Good Shephard Hosp., 901 F.2d 438, 440-41 (5th Cir. 1990)("[T]hose achieving limited or partial success may recover only that which is reasonable in light of the relief obtained.")(citing Hensley, 461 U.S. at 436). ISS has eliminated the vast majority of the time billed for matters related to the patent infringement claims from their request for attorneys' fees. However, ISS has included hours expended before the non-patent counts were added to the case, at least one hour spent drafting and responding to Markman briefs, hours writing and arguing the motion to stay the patent claims, and hours worked preparing the motions to bifurcate the patent claims from the non-patent claims. The Court considers recovery for these hours unreasonable and finds that the number of hours

reasonably expended on the litigation should be 10% less than ISS's requested number.

Second, the Court finds the rates ISS requests are reasonable. Generally district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases. See Louisville Black Police Officers Org. v. City of Louisville, 700 F.2d 268, 278 (6th Cir. 1983). A court's choice not to apply local market rates for attorneys' fees is not an abuse of discretion. See Wayne, 36 F.3d at 533. This case presented difficult technical issues. As a result, both local and lead counsel included lawyers with decades of intellectual property litigation experience, degrees in technical and scientific fields, and membership in the patent bar. The Court finds that federal patent or other complex intellectual property litigation is the relevant market for purposes of establishing the prevailing market rates in this case. Accordingly, the Court accepts the rates requested in this case as reasonable and AWARDS ISS $4,571,222 in attorneys' fees.

**C. Experts' Fee Award**

Experts' fees cannot be awarded as ordinary litigation expenses. See Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 377 (Fed. Cir. 1994)(citing W. Va. Hosps., Inc. v.

Casey, 499 U.S. 83 (1991)). The Court may only reimburse expert fees under its inherent power to impose sanctions for bad faith and vexatious conduct. Chambers v. Nasco, 501 U.S. 32, 46 (1991). Though ISS argues that Defendants unnecessarily increased experts' fees, there is no allegation of the type of "fraud or abuse of the judicial process" normally associated with an imposition of sanctions. Amsted, 23 F.3d at 378-79. Accordingly, the Court DENIES ISS's request for experts' fees.

## III. CONCLUSION

For the reasons discussed above, the Court GRANTS ISS's motion for attorneys' fees, AWARDS ISS $4,571,222 in attorneys' fees, and DENIES ISS's motion for experts' fees.

So ORDERED this 30th day of June, 2008.

s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE